UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                     CRIMINAL NO. 3:18-CR-217-DPJ-FKB

CHEY JOHNSON, ET AL.

ORDER

Defendant Chey Johnson says his speedy-trial rights were violated because the Government failed to indict him within 30 days of the arrest that ultimately supported Count 4 of the Indictment. He, therefore, moves to dismiss Count 4. After conducting an evidentiary hearing, the Court concludes that the motion must be denied.

I.      Factual Findings

In 2017, a joint task force operating under the Drug Enforcement Agency (DEA) conducted a wide-ranging investigation into suspected drug trafficking by Johnson and several co-defendants. That investigation led to two arrests in December 2017 that are relevant to Johnson's motion.

First, on December 4, 2017, the task force detected a transaction involving Defendant Kenneth Dewayne Williams. The information was shared with Officer Lafayette Martin, an investigator with the Hinds County Sheriff's Office who was also deputized in Morton, Mississippi (located in Scott County). Martin initiated a traffic stop in Scott County and discovered two kilograms of cocaine and $17,000 in Williams's vehicle. Significant to Johnson's motion, a DEA-6 report for that incident states, "Due to the ongoing investigation of DEA, WILLIAMS was charged through the State in which the charges will be dropped proceeding the conclusion of DEAs investigation." Ex. D-1 at 2–3.

The second relevant stop involved Johnson.  On December 6, 2017, the task force learned that Johnson would meet another individual near Exit 3 on Interstate 220 to purchase cocaine.  As anticipated, the two suspects arrived at the scene and then parted ways.  Task Force Officer Juan Chapa contacted Investigator Martin and informed him that Johnson might be traveling in his area with cocaine in a white truck.  While the parties and the witnesses quibbled over what Martin was told, it appears that he was contacted for the purpose of making the stop.  He was not per se instructed to stop Johnson, but that was the intent if Martin developed probable cause.

After receiving that call, Martin spotted Johnson's truck traveling west on Northside Drive in Hinds County, Mississippi.  Martin pursued in a clearly marked patrol vehicle and observed Johnson driving erratically, weaving in and out of traffic.  As Martin closed the gap between the vehicles, Johnson accelerated just as Martin initiated his blue lights.  A high-speed chase ensued, during which Johnson pulled onto the left side of the road, endangering oncoming traffic, and eventually drove his truck into a ditch.  Johnson and a co-defendant then exited the still-rolling truck and fled on foot.  Martin pursued Johnson and eventually subdued him by deploying his taser.  When Martin escorted Johnson back to the road, he found Johnson's truck crashed in a ditch; it contained approximately 22 pounds of cocaine.  *See* Ex. G-2 at 2.

Martin submitted two sworn affidavits regarding these incidents:  one for fleeing and eluding a law enforcement officer in a motor vehicle and the other for aggravated trafficking of a controlled substance.  *See* Ex. G-1 at 2; Ex. G-2 at 2.  A state-court judge then issued two bench warrants for Johnson, and he was eventually granted bond and released on electronic monitoring.  It is not clear whether he was ever indicted in Hinds County, but on November 6, 2018, he was indicted in this Court and charged in a four-count indictment.  Count 4 of that indictment charges him with possessing the cocaine Martin recovered on December 6, 2017.  Johnson was arrested

by federal authorities on November 28, 2018, and he received an initial appearance later that day. Around that same time, the state removed the ankle monitor.

II.     Analysis

Under the Speedy Trial Act, a defendant must be indicted within 30 days of an arrest. 18 U.S.C. § 3161(b).  "[T]he defendant has the burden of providing adequate proof to support his motion to dismiss" for a violation of the Speedy Trial Act.  *United States v. Johnson*, 29 F.3d 940, 945 (5th Cir. 1994).

"It is clear that this section is triggered only by federal action, by bringing federal charges.  'An arrest made by a state officer, even if state and federal officers are cooperating at the time, does not start the running of the thirty[-]day time period.'"  *United States v. Charles*, 883 F.2d 355, 356 (5th Cir. 1989) (quoting *United States v. Taylor*, 814 F.2d 172, 175 (5th Cir.), *cert. denied*, 484 U.S. 865 (1987)) (other citations omitted).  Here, Johnson was indicted before his federal arrest, so § 3161(b) would not apply.

There is, however, an exception to his rule.  According to the Fifth Circuit, "the requirements of the Speedy Trial Act . . . would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act."  *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000) (quoting *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993)).  "Thus, . . . the Speedy Trial Act [is] triggered by 'civil detentions which are mere ruses to detain a defendant for later criminal prosecution.'"  *Id.* (quoting *Cepeda-Luna*, 989 F.2d at 357).

As an initial matter, early cases limited the ruse exception to civil detentions.  *See id.* The Government, therefore, argues that the exception is inapplicable to state detentions for

criminal offenses. Neither side has identified binding authority examining whether criminal detentions by state actors can trigger the ruse exception. The closest cited case is *United States v. Mooneyham*, where the defendant was held on criminal charges and asserted the ruse exception. 376 F. App'x 440, 441 (5th Cir. 2010). Although the Fifth Circuit held that the defendant failed to meet his burden, it appeared to accept that the ruse exception could apply to criminal detentions. *Id.* at 441–42. Based on this limited authority, this Court assumes, without deciding, that the ruse exception could apply to a state arrest in the criminal context.

But even if applicable, "we will only apply this exception where the defendant demonstrates that the *primary or exclusive* purpose of the civil detention was to hold him for future criminal prosecution." *De La Pena-Juarez*, 214 F.3d at 598 (emphasis added); *see also id.* (noting that that exception is needed when detention is "*solely* for the purpose of bypassing the requirements of the Speedy Trial Act" (emphasis added) (quoting *Cepeda-Luna*, 989 F.2d at 357)).

While Johnson fails to meet this standard, his argument is not frivolous. Granted, there is no direct evidence of collusion between Hinds County and the DEA to circumvent Johnson's speedy-trial rights, but the Court is troubled by the DEA-6 regarding Co-Defendant Williams's arrest. That document suggests an understanding by the DEA task force that local officials in Scott County would hold Williams in custody until the DEA's investigation ended. *See* Ex. D-1 at 2–3. And while there is no similar evidence of an agreement between the task force and officials in Hinds County—where Johnson was arrested—the close timing of these two arrests in the same investigation and the fact that Johnson remained on state bond until the federal charges at least suggests a similar understanding.

That said, "mere cooperation by federal and state officials does not constitute collusion so as to characterize the arrest as federal and start the running of the Speedy Trial Act clock." *United States v. Ramirez*, No. 94-20179, 1995 WL 313976, at *3 (5th Cir. May 9, 1995). As the Fifth Circuit favorably noted, the Ninth Circuit "has repeatedly declined to apply the Speedy Trial Act in situations where the defendant's detention is not pursuant to federal criminal charges, even though federal criminal authorities may be aware of and even involved with that detention." *De La Pena-Juarez*, 214 F.3d at 600 (quoting *Cepeda-Luna*, 989 F.2d at 355).

Here, the DEA contributed to Johnson's arrest and probably knew he would be held, but Johnson was not held on federal criminal charges. *See United States v. Charles*, 883 F.2d 355, 336 (5th Cir. 1989) (rejecting ruse exception where state authorities thought they were holding defendant for federal prosecution and noting "that Charles was not under a federal detainer; he was not the subject of a federal complaint; there were no federal charges pending against him"), *cert. denied*, 493 U.S. 1033 (1990).

Along these same lines, Johnson handed Hinds County an independent and legitimate reason to place him in custody. As noted, Martin observed Johnson driving recklessly before he attempted to initiate the stop. And before Martin took Johnson into custody, Johnson led Martin on a high-speed chase, endangered the public, abandoned a still-rolling truck, fled on foot, and resisted arrest. Based on Johnson's alleged conduct after the drug transaction and before he was arrested, no local authority would have simply released him.

In cases like this—where an independent basis for the state detention exists—the Fifth Circuit has rejected ruse-exception arguments. For example, in *United States v. Rodriguez-Andrade*, "Rodriguez was arrested and detained based on a charge that he violated the conditions of his supervised release." 73 F. App'x 81 (5th Cir. 2003). The Fifth Circuit held, "Therefore,

5

the purpose of his detention was not in anticipation of formally charging him with the crime of illegal reentry. He has therefore not established that illegal reentry formed the primary basis for his civil detention and does not fall under the 'ruse exception.'" *Id.* A similar holding occurred in *De La Pena-Juarez*, where the Fifth Circuit observed that it was unclear whether "the administrative and criminal charges filed against De La Pena-Juarez were in fact identical." 214 F.3d at 599.

That same analysis occurred in *Mooneyham*, though that case was factually complex and addressed additional issues. The state officers in *Mooneyham* arrested the defendant based on a federal warrant, and there was evidence that the state and federal prosecutors cooperated with each other regarding his state detention. *United States v. Mooneyham*, No. V-08-01, 2008 WL 4372721, at *1 (S.D. Tex. Sept. 17, 2008), *aff'd*, 376 F. App'x 440 (5th Cir. 2010). After a federal complaint was filed, the state case was dismissed with the notation: "Defendant to face federal charges." *Id.* at *2. The district court rejected Mooneyham's ruse-exception argument, noting, in part, that the defendant was "arrested on the state charge of hindering apprehension," which was different from the federal charge for which Mooneyham sought dismissal. *Id.* at *3. The Fifth Circuit affirmed, noting that "the district court's finding [was] supported by the record and [was] not clearly erroneous." *Mooneyham*, 376 F. App'x at 442.

In sum, there was a valid basis to detain Johnson separate from the basis for the charges in Count 4. And while there was cooperation between state and federal officials, Johnson has not met his burden of showing that "the primary or exclusive purpose of the . . . detention was to hold him for future criminal prosecution." *De La Pena-Juarez*, 214 F.3d at 598.

III.   Conclusion

For the reasons stated, Johnson's Motion to Dismiss Count 4 [119] is denied.

**SO ORDERED AND ADJUDGED** this the 26th day of July, 2021.

s/ *Daniel P. Jordan III*  
CHIEF UNITED STATES DISTRICT JUDGE